**IN THE UNITED STATES DISTRICT COURT**

**FOR THE MIDDLE DISTRICT OF FLORIDA**

Mr. Joses Dale Haynes Braxton, et al.

**Plaintiff**,

v.

SUPER EGO HOLDING, ROCKET EXPEDITED, TWIN CARRIERS, E-7 LOGISTICS, REX TRUCKING INC., ROY DAVIS, AND CREATORS OF FRAUDULENT LEASE PURCHASE AGREEMENTS

**Defendants**.

Case No.

**COMPLAINT FOR FRAUD, BREACH OF CONTRACT, UNFAIR TRADE PRACTICES, VIOLATIONS OF UCC, FLORIDA STATUTES, WHISTLEBLOWER ACTS, AND FEDERAL RESERVE POLICIES**

**I. PARTIES**

1. Plaintiff, Jose(s) Dale Haynes Braxton, is a Class A Commercial Driver's License (CDL) holder and was a customer and participant in a fraudulent lease-purchase agreement with Defendants for a truck and related services. At all relevant times, Plaintiff was operating out of 130 Lane Ave N., Jacksonville, FL 32254.

2. Defendant Super Ego Holdings ("Super Ego") is the parent company of Rocket Expedited, Twin Carriers, E-7 Logistics, Rex Trucking Inc., and other associated entities that operate as part of the fraudulent business network. Super Ego Holding oversees the operations and business practices of all listed subsidiaries and co-defendants in this action.

3. Defendants, Rocket Expedited, Twin Carriers, E-7 Logistics, Rex Trucking Inc., and Roy Davis operate as agents and employees of Super Ego Holdings, acting under its direction and control to execute the fraudulent schemes and deceptive practices alleged herein.

4. Defendants engage in fraudulent accounting practices, deceptive business practices, and unfair trade practices targeting predominantly minority and economically disadvantaged individuals for exploitation through illegal lease-purchase agreements.

---

II. **JURISDICTION AND VENUE**

5. This Court has jurisdiction over this action under 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1332 (diversity jurisdiction), and 28 U.S.C. § 1367 (supplemental jurisdiction).

6. Venue is proper in this District under 28 U.S.C. § 1391 because Defendants are located within the State of Florida and the events giving rise to the claim occurred in this District.

---

III. **STATEMENT OF FACTS**

7. On or about 2-26-2025, Plaintiff entered into a four-year agreement with Defendant Roy Davis, who represented that he was offering an owner-operator position through Crena Transportation, a company advertised as offering over-the-road (OTR) and regional driving positions.

8. Upon Plaintiff's arrival at the location, it became evident that no company positions were available. Instead, Plaintiff was coerced into a lease-purchase agreement for a truck, initially agreed to at a weekly payment rate of $425, which was later increased to $500 per week without Plaintiff's consent or awareness.

9. Expecting to work for Crena Transportation, on or about 2-27-2025, Plaintiff was flown to Colorado to retrieve a truck under the assumption that it would be part of the Crena fleet. However, the truck had "Rocket" branding and "Super Ego" mud flaps, indicating that it was not a Crena truck.

10. Plaintiff was informed that no recovery bonus would be paid because Super Ego only offered recovery bonuses to returning drivers. Plaintiff was coerced into accepting the truck and cleaning it, despite its obvious neglect and poor condition. No maintenance had been performed on the truck after it was towed and resold.

11. The recruiter for Defendants claimed that drivers would receive 88% of gross revenue and that drivers were making upwards of $8,000 per week. However, Plaintiff's first settlement statement showed that only 27% of the gross revenue was paid to Plaintiff, in direct contradiction to the promises made.

12. Upon further investigation, Plaintiff discovered a series of fraudulent charges on the settlement statements, including:

**Cargo insurance charges with no actual coverage provided to Plaintiff.**

**Electronic Logging Device (ELD) charges for equipment never used.**

**Bobtail insurance charges for coverage that did not exist for Plaintiff.**

**Truck registration fees for a registration already paid for by a prior operator with no renewal provided to Plaintiff.**

13. Plaintiff's lease-purchase agreement was never notarized, nor was it notarized in Plaintiff's presence, rendering it legally void under Florida law.

14. The insurance coverage provided by the Defendants was for general liability (COI) listing only "Rocket" as the insured, leaving Plaintiff and his company without any legitimate insurance coverage.

15. Super Ego Holdings, as the parent company, had control over the fraudulent actions and deceptive practices carried out by its subsidiaries, including Rocket Expedited, Twin Carriers, and others. These practices were part of a broader scheme to engage  minority and other economically disadvantaged individuals in fraudulent lease-purchase agreements for trucks, with the knowledge and support of Super Ego.

16. Defendants have engaged in a pattern of fraudulent activities, targeting predominantly Black Indigenous Americans, aka African Americans, and economically disenfranchised individuals for lease-purchase agreements that are designed to fail, forcing operators into financial distress to ultimately abandon. This creates a revolving door of abandoned notes and the proceeds derived from kept by the Parent company, other business assets, and trucks that are recycled with false promises of ownership

17. These fraudulent and deceptive practices mirror the predatory financing schemes that contributed to the 2008 housing crisis, where individuals were given false assurances of ownership but were ultimately saddled with unsustainable financial obligations.

18. Plaintiff is informed and believes that the actions of the Defendants violate various state and federal laws, including but not limited to:

The Florida Deceptive and Unfair Trade Practices Act (FDUTPA), Section 501.201-501.213, Florida Statutes.

The Uniform Commercial Code (UCC), specifically regarding fraudulent financing and breach of contract.

Whistleblower Protection Acts, including but not limited to 49 U.S.C. § 31105, which prohibits retaliation against whistleblowers in the trucking industry.

19. Additionally, Plaintiff has gathered evidence indicating that other drivers have been similarly defrauded by Defendants, and that these deceptive practices are systemic across their operations.

20. The fraudulent financial practices engaged in by Defendants are consistent with "debt-based money" creation, a concept described in the Federal Reserve's "Modern Money Mechanics". The Federal Reserve publication outlines how money is created through fractional reserve banking and how this system can be exploited through deceptive financing mechanisms, like those used by Defendants in structuring their fraudulent lease-purchase agreements. This practice essentially creates money from nothing, trapping individuals in perpetual debt obligations without providing them tangible assets or value in return.

---

IV. **CAUSES OF ACTION**

**COUNT I: FRAUD**

21. Plaintiff incorporates by reference the facts and allegations set forth in paragraphs 1 through 20.

22. Defendants knowingly and intentionally misrepresented material facts to Plaintiff, including the nature of the lease-purchase agreement, the terms of the insurance coverage, and the actual compensation to be paid to Plaintiff.

23. As a direct result of these fraudulent misrepresentations, Plaintiff has suffered significant financial harm and is entitled to recover damages, including but not limited to actual damages, consequential damages, and punitive damages.

**COUNT II: BREACH OF CONTRACT**

24. Plaintiff incorporates by reference the facts and allegations set forth in paragraphs 1 through 20.

25. Defendants have breached the terms of the lease-purchase agreement by failing to provide the agreed-upon equipment, services, and compensation, including but not limited to failure to provide actual and additional insured insurance coverage, misapplication of payments, and improper deductions from Plaintiff's earnings.

26. As a direct result of Defendants' breach, Plaintiff has suffered financial harm and is entitled to recover damages, including the return of all payments made under the lease-purchase agreement and any consequential damages.

## COUNT III: VIOLATION OF FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT (FDUTPA)

27. Plaintiff incorporates by reference the facts and allegations set forth in paragraphs 1 through 20.

28. Defendants have engaged in deceptive and unfair trade practices, including fraudulent misrepresentations, false advertising, and manipulation of lease-purchase agreements, in violation of FDUTPA.

29. As a direct result of Defendants' conduct, Plaintiff has suffered financial loss and is entitled to recover damages, including statutory damages, actual damages, and attorney-in-fact fees if applicable.

## COUNT IV: VIOLATION OF THE UNIFORM COMMERCIAL CODE (UCC) & MODERN MONEY MECHANICS

30. Plaintiff incorporates by reference the facts and allegations set forth in paragraphs 1 through 20.

31. Defendants have violated the UCC by engaging in fraudulent financing, misrepresentation of goods and services, and wrongful retention of payments made by Plaintiff without providing the agreed-upon goods and services. This includes the creation of debt-based financial obligations that were not supported by tangible assets, akin to the practices outlined in Modern Money Mechanics published by the Federal Reserve.

32. Defendants' conduct is consistent with the debt-based financing practices described in the Federal Reserve's Modern Money Mechanics publication, which outlines how banks create money through fractional reserve banking. Defendants, acting under the direction of Super Ego Holdings, used this deceptive method to force Plaintiff into an unsustainable debt obligation without delivering a tangible, valuable asset in return. This is in violation of the Uniform Commercial Code (UCC) governing fraudulent financing, misrepresentation, and breach of contract.

33. Plaintiff is entitled to recover damages for all payments made under fraudulent conditions and any consequential damages stemming from the breach of the UCC and fraudulent financing practices.

**COUNT V: WHISTLEBLOWER RETALIATION**

34. Plaintiff incorporates by reference the facts and allegations set forth in paragraphs 1 through 20.

35. Defendants have retaliated against Plaintiff for raising concerns about their fraudulent practices, including making dedeat threats, threats of reporting false information to clearinghouse house to render other driving opportunities, falsely accusing Plaintiff of stealing their truck, threats of reporting Plaintiff to law enforcement and offering the same position the very next day to rre-enroll in Jacksonville FL to all systematic ways to harass Plaintiff. These actions violate federal and state whistleblower protection laws, including 49 U.S.C. § 31105, which prohibits retaliation against whistleblowers in the trucking industry.

36. As a result of Defendants' retaliatory actions, Plaintiff has suffered harm and is entitled to seek damages, including back pay, reinstatement, compensation for emotional distress, and any other relief as permitted under whistleblower protection laws.

**V. PRAYER FOR RELIEF**

**WHEREFORE, Plaintiff respectfully requests that this Court:**

1.  Award actual damages to Plaintiff for the losses incurred as a result of Defendants' fraudulent conduct, including but not limited to the return of all payments made under the lease-purchase agreement, including any improper charges or fees.

1.  Award consequential damages for any harm caused to Plaintiff, including lost wages, emotional distress, and other financial harm resulting from Defendants' actions.

1.  Award punitive damages to deter Defendants from continuing their fraudulent practices and to punish their intentional and malicious actions toward Plaintiff and others similarly situated.

1.  Award statutory damages as available under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), as well as any other applicable statutory violations, including attorney fees, costs, and expenses incurred in prosecuting this action.

1.  Award the return of payments made under the fraudulent lease-purchase agreement, as well as any consequential losses arising from Defendants' violations of the Uniform Commercial Code (UCC) and fraudulent financing.

1.  Issue an injunction requiring Defendants, and any entities under their control, to cease and desist from engaging in the fraudulent practices outlined in this complaint and any similar illegal or deceptive conduct in the future.

1.  Order Defendants to pay attorney's fees, court costs, and any other expenses incurred by Plaintiff in pursuing this action.

1.  Award inductive relief, including any continuing monitoring, auditing, and enforcement measures that this Court deems necessary to ensure that Defendants cease and desist from their fraudulent and illegal practices. This may include, but is not limited to:

Independent audits of Defendants' financial records and business practices to ensure compliance with the law.

Ongoing oversight by the Court or third-party agencies to monitor Defendants' compliance with the law and restitution to Plaintiff and other affected parties.

Restoration of Plaintiff's rights under any previous agreements that were rendered void due to Defendants' fraudulent conduct.

Reparative measures to return Plaintiff to the financial position he would have been in had Defendants not engaged in fraudulent or illegal conduct.

1. Order a full and complete financial audit, including a securitization audit, of all leases, loans, and financial products issued by Defendants to assess the full extent of the damages caused by their fraudulent practices.

1. Award any other relief that this Court deems just and proper.

## VI. DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED this __20th_ day of March, 2025.

**Respectfully submitted**,

Plaintiff's Name Mr. Joses Dale Haynes Braxton

 Address 3073 Redbud Rd Memphis TN 38109

Phone Number 901-295-9133

Email Address Privateestate23@gmail.com

Pro Se,

Minister Joses Dale Haynes Braxton